IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES A. LEDBETTER, #159226, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 2:20-CV-276-RAH-SMD ) |
| NURSE PETTAWAY, et al., | ) ) ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

Plaintiff James A. Ledbetter, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action. Doc. 1. Thereafter, Plaintiff filed an Amended Complaint (Doc. 5), which became the operative pleading in this action, and an amendment thereto (Doc. 28). The Amended Complaint names Nurse Denzell Pettaway, Sergeant Brittany Marshall, Officer Christian Robinson, and Officer Mardis Howard as defendants, all of whom were employed at Bullock Correctional Facility at the time of the alleged events. Doc. 5 at 1, 2.[1] It appears to allege that Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. *Id*. at 3 (stating "medical care my 8th Amendment where violation"), 5 (stating "[t]he broke hip is a voilation [sic] of my

---

[1] The Amended Complaint also names Sergeant Johnson as a defendant (Doc. 5 at 1, 2), but Plaintiff voluntarily dismissed Sergeant Johnson prior to this Recommendation (*see* Docs. 15, 17).

constitutional rights cruel and unusual punishment"). As relief, Plaintiff seeks "everything [he is] asking for in this 1983" and "medical prole [sic] under Disabilities Act." *Id*. at 4.

On May 15, 2020, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims. Doc. 8. Defendant Pettaway filed his Special Report on June 4, 2020 (Doc. 13), and Defendants Marshall, Robinson, and Howard filed their joint Special Report on June 15, 2020 (Doc. 18). Thereafter, Defendants filed several supplements to their Reports. *See* Docs. 22, 24, 26, 30, 34, 41, 42. In their Reports and supplements thereto, Defendants move for summary judgment (Docs. 13 at 19; 22 at 13) and provide evidentiary materials in support (Docs. 13-1; 18-1 through 18-3; 22-1 through 22-3; 24-1; 26-1; 30-1; 34-1 through 34-5; 41-1; 42-1 through 42-6). On July 15, 2020, the Court issued another Order directing Plaintiff to file a response to Defendants' filings with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 27. The Court received Plaintiff's response, as well as a supplemental response, in October 2021. Docs. 43, 44.

In its July 15 Order, the Court notified the parties that, absent any objections, it may thereafter treat Defendants' Reports, as supplemented, and Plaintiff's response as motions for summary judgment and a response. Doc. 27 at 3. No objections were filed. Accordingly, the undersigned will now construe Defendants' Special Reports as motions for summary judgment and, for the reasons set forth below, RECOMMEND that judgment be GRANTED in favor of Defendants.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal

4

quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III. RELEVANT FACTS[2]

The following facts derive from Plaintiff's verified Amended Complaint (Doc. 5); the sworn or verified evidentiary materials proffered by Defendants (Docs. 13-1; 18-1 through 18-3; 22-1 through 22-3; 26-1); and Plaintiff's verified supplemental response (Doc. 44).[3]

The Amended Complaint contains the following allegations:

> [In December 2019, Defendant] Marshall had two inmates help me to the health care which I had a broke hip and I telling her the whole time I have a broke she just lagh and told the two same inmates to help me back to the

---

[2] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[3] Although Plaintiff also filed an amendment to the Amended Complaint (Doc. 28) and an initial response to Defendants' filings (Doc. 43), these filings are neither sworn nor verified in accordance with 28 U.S.C. § 1746. Accordingly, the Court cannot consider the allegations therein in deciding summary judgment. *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment.") (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)); *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (holding that district court should not have considered unsworn and unverified allegation in deciding summary judgment); *Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 252 n. 3 (11th Cir. 2005) ("[T]he complaint was unverified and therefore could not be considered evidence supporting [plaintiff's] claim.").

> dorm. [A] inmate . . . pick me up off the bed and throwed me which upon me landing in the floor on my left side which broke my hip. [T]he second time I went to the health care [Defendant] Pettaway just lagh at me and . . . told the office to put me on the bench outside I would be alright. [A]fter about 4 or 5 hours of laying on the bench, Lt. Johnson realize I did have a broke hip and call the ambulace where I went to Jackson hosipitale where I had surgrey and they put a rod and some screwes in my hip.[] Jackson hosipitale doctor report plus [Defendant] Howard wittness the whole indent and did nothing about just sit there. [sic]

Doc. 5 at 2–3.

In response, Defendants proffer evidence—including their own affidavits and Plaintiff's medical records—which sets forth the following version of events. On December 31, 2019, at 10:30 a.m., Plaintiff was brought to the Health Care Unit by Correctional Officer Griffin. Doc. 13-1 at 2, 7. The nurse on duty, Nurse Richardson, performed a body chart, which states: "Awake/eyes open/moving all extremities/no distress noted. No reported injuries. No injuries noted. Aware of all surroundings, name, #, DOB." *Id*. Notes from that visit indicate that Plaintiff was "suspected/reported [to be] under the influence of illegal medications." *Id*. at 3, 8. They further indicate that, from 10:30 a.m. until 11:15 a.m., Plaintiff was repeatedly monitored, and he was noted to be "moving around" and "talk[ing] non-stop" with "no distress noted" and no signs of discomfort. *Id*. at 8.

On January 1, 2020, at or around 1:50 a.m., Plaintiff returned to the Health Care Unit. *Id*. at 3, 9, 10. Plaintiff was "rambling verbally" and had previously been diagnosed with polysubstance abuse. *Id*. at 3, 9. His vital signs were normal. *Id*. Due to Plaintiff's physical and mental state, he was kept in the Health Care Unit for observation. *Id.* at 3. At 3:00 a.m., he was reassessed. *Id*. at 3, 9; Doc. 41-1 at 2. His vital signs were again normal,

and he neither exhibited any signs of acute distress nor verbalized any indications of distress. *Id.* There was no redness or bruising to his hip. Doc. 13-1 at 9. At 3:20 a.m., he was offered pain medications, which he refused. *Id*. at 3, 9; Doc. 41-1 at 2. Plaintiff was uncooperative with his assessment and voluntarily ambulated out of the Health Care Unit. Docs. 13-1 at 3–4, 9; 41-1 at 2. However, Plaintiff did not leave the lobby of the Health Care Unit, and he was convinced to stay there for further observation. Docs. 13-1 at 4; 41-1 at 2.

Upon speaking with the charge nurse, Nurse Ray, Defendant Pettaway decided that it would be best to notify the Medical Director, Dr. Siddiq, for further evaluation. *Id*. Therefore, at 4:45 a.m., Defendant Pettaway placed a call to Dr. Siddiq regarding Plaintiff's condition. *Id*. at 4, 9. At 4:57 a.m., Defendant Pettaway performed a body chart, at which time Plaintiff stated that "[his] hip hurt." Docs. 13-1 at 10; 41-1 at 2. An abrasion was noted on his left shoulder, elbow, and lower leg, but "no acute distress [was] noted." Doc. 13-1 at 9, 10. Dr. Siddiq ordered that Plaintiff be taken to Jackson Hospital for further evaluation. *Id*. at 4, 9. Accordingly, an ambulance was called and Plaintiff was transported to Jackson Hospital for further evaluation. *Id.* at 4. Thereafter, the emergency room physicians at Jackson Hospital determined that Plaintiff had a left hip femur fracture. *Id.* at 5, 14.

Defendant Pettaway avers that Plaintiff could not and did not inform him or other medical staff of his medical concerns or needs—specifically, that he had problems with his left hip—when he was initially brought to the Health Care Unit around 1:50 a.m., apparently due to being under the influence of illegal substances. *Id*. at 5. He further avers

7

that, at all times, Plaintiff received nursing care within the standard of care of Registered Nurses practicing nursing in Alabama. *Id*. at 6.

Sergeant Anthony Lambert avers that Defendants Marshall, Howard, and Robinson "did not have anything to do with transferring [Plaintiff] to the health care unit on either December 31, 2019 or January 1, 2020 nor did the[y] have anything to do with securing [Plaintiff] while he was in the health care unit on either of those dates." Doc. 24-1 at 3. Similarly, Defendants Howard and Robinson each aver that they "had no interaction with and/or any personal knowledge of [Plaintiff's] attempt to obtain medical treatment for a hip injury or any other incident," and Defendant Marshall avers that she has "no knowledge of [Plaintiff's] attempts to receive medical treatment on December 31, 2019 or January 1, 2020 for a hip injury" and "had no involvement with him receiving treatment or lack thereof." Doc. 26-1.

In response to Defendants' filings, Plaintiff states, in relevant part[4], that Defendant Robinson "was working the health care the whole time"; Defendant Marshall "work checking sercurity [sic] check at the health care about the same time so she knew what had

---

[4] Plaintiff also appears to state new allegations in support of new, seemingly unrelated claims. *See generally* Doc. 44. For instance, he states that, on an unidentified date, an unidentified individual gave him another inmate's medication, which resulted in chest pain and his being transported to the hospital by ambulance; he "can't get no med[i]cal attention because of the lawsuit" he filed in this Court; and, even though the prisons are overcrowded, "the State has done nothing but pack in these dormes [sic] unmontior [sic] and unsupervise [sic]." *Id*. at 2, 6. However, to the extent he seeks to bring new claims based on these allegations, he cannot do so. First, the Court denied Plaintiff's motion to amend on October 21, 2021, noting that a claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests, . . .[and] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Doc. 45 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Second, "[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." *Mitchell v. Pilgrim's Pride Corp.*, 817 F. App'x 701, 708 (11th Cir. 2020) (citing *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 779 (11th Cir. 2014)).

8

happend [sic]"; the unidentified officers that purportedly witnessed another inmate break Plaintiff's hip "didn't not do anything to the other inmate didn't lock him up or write him up or nothing"; and he "was release about 1 hour from the health care where [he] crawel [sic] the bench outside . . . where [he] remain till Nurse Ray and Dr. Siddiq order [him] be transferred by ambulance to Jackson Hospital . . . between 5:10 to 5:15 a.m." Doc. 44.

## IV. DISCUSSION

### a. Request for Relief

As an initial matter, the only specific relief Plaintiff seeks in the Amended Complaint is "medical prole [sic] under Disabilities Act." Doc. 5 at 4. However, even if Plaintiff has a disability that qualifies for protection under the Americans with Disabilities Act—which he has wholly failed to demonstrate—he is not entitled to release on parole simply because of that disability. *See Mitchell v. Wynne*, No. 2:12-CV-249-WHA, 2015 WL 1345208, at *5 n. 2 (M.D. Ala. Mar. 23, 2015) ("The mere fact that an inmate suffers from a disability, even a disability qualified for protection under the Americans with Disabilities Act, does not establish a liberty interest in parole."). Indeed, it "is well-settled that there is no federal constitutional right to parole." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001) (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.")). Nor is there a state-created liberty interest in parole in Alabama. *See, e.g., Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991) ("[W]e have previously determined that the Alabama parole statute, Ala. Code § 15-22-26 (1975), does not confer a liberty interest in parole that is protected

by the Due Process Clause because the statute provides that parole may be granted at the Board's discretion."); *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982) ("The Alabama [parole] statute . . . calls for discretionary rather than mandatory action on the part of the board.[] When the statute is framed in discretionary terms there is not a liberty interest created.").

Accordingly, because Plaintiff does not have a liberty interest in parole, and any disability he may have—but wholly fails to demonstrate—fails to change that, he is not entitled to his sole request for relief.

    **b.**    **Purported Claims Against Defendant Robinson**

Second, the Amended Complaint does not contain any factual allegations regarding Defendant Robinson. *See generally* Doc. 5. The Eleventh Circuit has demonstrated that dismissal of a defendant is proper where a complaint fails to state any allegations that associate the named defendant with a constitutional violation. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (citing *Pamel Corp. v. Puerto Rico Highway Auth.*, 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")); *see also Twombly*, 550 U.S. at 555 (stating that a pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (citation omitted).

Accordingly, because the Amended Complaint fails to state any allegations whatsoever associating Defendant Robinson with a constitutional violation[5], any purported claims against Defendant Robinson are due to be DISMISSED.

c.  **Purported Claims against Defendant Howard**

Third, the only allegation in the Amended Complaint regarding Defendant Howard is that he "wittness [sic] the whole indent and did nothing about just sit there. [sic]" Doc. 5 at 3. There are no further allegations pertaining to Defendant Howard explaining what he may have witnessed—indeed, Plaintiff alleges at least three separate incidents on two separate days—or how he specifically acted in an unconstitutional manner. Although the Amended Complaint is verified, "a verified complaint's allegations are subject to the scrutiny that an affidavit receives from a court when a court is considering a summary judgment motion, i.e., conclusory statements of ultimate facts . . . are not considered competent evidence to defeat summary judgment." *Roy v. Johnson*, 97 F. Supp. 2d 1102 (S.D. Ala. 2000) (citing *Murrell v. Bennett,* 615 F.2d 306, 310 n. 5 (5th Cir. 1980)). Plaintiff's single, bare allegation regarding Defendant Howard, which wholly fails to establish what Defendant Howard purportedly witnessed and how or why his conduct was unreasonable, is a conclusory statement insufficient to defeat summary judgment. *See id*.;

---

[5] Indeed, the only specific allegation pertaining to Defendant Robinson is contained in Plaintiff's supplemental response, not his Amended Complaint, and states only that Defendant Robinson "was working the health care the whole time." Doc. 44 at 1. This single allegation is far too vague and conclusory to establish an Eighth Amendment violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (providing in part that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do[,'] [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (citing *Twombly*, 550 U.S. at 555).

11

*see also Ellis*, 432 F.3d at 1326 ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.").

In response to Plaintiff's single allegation, Defendant Howard avers that he "had no interaction with and/or any personal knowledge of [Plaintiff's] attempt to obtain medical treatment for a hip injury or any other incident" and that he has "no knowledge of the alleged incident." Doc. 26-1 at 1. Sergeant Lambert affirms that Defendant Howard "did not have anything to do with transferring [Plaintiff] to the health care unit on either December 31, 2019 or January 1, 2020 nor did [he] have anything to do with securing [Plaintiff] while he was in the health care unit on either of those dates." Doc. 24-1 at 3. Plaintiff does not refute this evidence, as his supplemental response to Defendants' filings makes no mention of Defendant Howard. *See generally* Doc. 44.

Accordingly, because Plaintiff has failed to proffer sufficient allegations or evidence from which a reasonable factfinder could deduce that Defendant Howard violated his constitutional rights, Defendant Howard is entitled to summary judgment on any purported claims against him.

### d. Purported Eighth Amendment Deprivation of Medical Care Claims against Defendants Pettaway and Marshall

Fourth, the United States Supreme Court has held that it is only *deliberate* indifference to a serious medical need that is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To succeed on an Eighth Amendment deprivation of medical care claim, a plaintiff must demonstrate at least two elements. First, he must demonstrate "an objectively serious medical need . . . that, if left unattended, pos[es] a

substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotations and citations omitted). "[A] serious medical need is [one] diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation omitted). Second, he must demonstrate that the defendant's response, or lack thereof, was "poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnosi[s] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (quoting *Estelle*, 429 U.S. at 105–06).

"[T]o show the required subjective intent to punish, [the] plaintiff must demonstrate that the [defendant] acted with an attitude of 'deliberate indifference.'" *Id*. (quoting *Estelle*, 429 U.S. at 105). A finding of deliberate indifference requires that the defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [and that he] also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (noting that an Eighth Amendment violation occurs only where the defendant actually "knows of and disregards an excessive risk to inmate health or safety"). "When the need for treatment is obvious, medical care that is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). However, a "simple difference in medical opinion" does not constitute deliberate indifference. *Simpson*, 200 F. App'x at 839 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Even assuming Plaintiff has demonstrated a sufficiently serious medical need, he has failed to demonstrate that either Defendant Pettaway or Defendant Marshall were deliberately indifferent to that need. As to Defendant Pettaway, Plaintiff alleges only that "the second time [he] went to the health care [Defendant] Pettaway just lagh [sic] at [him] and told the office to put [him] on the bench outside [he] would be alright." Doc. 5 at 3. In his supplemental response, which contains no allegations pertaining specifically to Defendant Pettaway, he further states, "I was release about 1 hour from the health care where I crawl [sic] the bench outside of the healthcare where I remain till Nurse Ray and Dr. Siddiq order me be transferred." Doc. 44 at 4.

Plaintiff makes no allegations regarding Defendant Pettaway's knowledge of a serious injury to Plaintiff. *See generally* Doc. 5. He does not allege that he or anyone else told Defendant Pettaway he was seriously injured or in significant pain, nor does he provide facts to demonstrate that his need for treatment was obvious to Defendant Pettaway. He simply states, with no further context, that Defendant Pettaway "just lagh at [him] and . . . told the office to put [him] on the bench outside [he] would be alright." *Id*. at 3. Plaintiff has proffered nothing to indicate that Defendant Pettaway had any knowledge this conduct may result in a substantial risk of serious harm to Plaintiff.

To the contrary, the undisputed medical evidence demonstrates that, on December 31, 2019, Plaintiff was "moving all extremities" with "no distress noted," "[n]o reported injuries, "and "[n]o injuries noted." Doc. 13-1 at 2–3, 7. He was monitored several times and noted to be "moving around" and "talk[ing] non-stop" with "no distress noted" and no signs of obvious discomfort. *Id*. at 8. On January 1, 2020, when Plaintiff returned to the

14

Health Care Unit, he was "rambling verbally." *Id*. at 10. His vital signs were normal, he did not demonstrate any signs of acute distress or verbalize any indications of distress, and there was no redness or bruising to his hip. *Id*. at 3, 9, 10. He was offered pain medications, *which he refused*. *Id*. at 3, 9. There is no record of Plaintiff specifically telling Defendant Pettaway his hip hurt until 4:57 a.m. and, even at that time, "no acute distress [was] noted." *Id*. at 10.

Even accepting Plaintiff's version of events as true, that Defendant Pettaway ordered Plaintiff to remain on the bench outside the Health Care Unit and did not call an ambulance until several hours later, this does not demonstrate deliberate indifference under these circumstances. There are simply no allegations or evidence to suggest that Defendant Pettaway was aware of Plaintiff's serious injury or resultant pain—particularly given that Plaintiff refused medication—and failed to respond reasonably. Indeed, Defendant Pettaway specifically avers that Plaintiff did *not* inform him of his medical concerns or needs when he arrived at the Health Care Unit—ostensibly as a result of his being under the influence of drugs—and that, at all times, Plaintiff received nursing care within the standard of care of Registered Nurses practicing nursing in Alabama. Doc. 13-1 at 5–6. Plaintiff does not refute those statements or any of the medical evidence in his response.

Thus, based on the undisputed evidence, the Court cannot find that Defendant Pettaway's conduct was "poor enough to constitute 'an unnecessary and wanton infliction of pain.'" *Taylor*, 221 F.3d at 1258 (quoting *Estelle*, 429 U.S. at 105–06). Rather, his decision not to immediately transfer Plaintiff to an outside hospital for further evaluation and instead to monitor Plaintiff and offer him pain medications—which Plaintiff did not

15

take—may, at best, constitute "accidental inadequacy" or "negligence in diagnosis," which does not amount to deliberate indifference. *See id.*; *see also McCall v. Cook*, 495 F. App'x 29, 31 (11th Cir. 2012) ("While Plaintiff may have had a serious medical need that was later discovered at a different facility, [the defendant doctor's] decision to order no x-ray or other diagnostic imaging was a medical judgment that does not amount to deliberate indifference.").

As to Defendant Marshall, Plaintiff alleges that she "had two inmates help [him] to the health care which [he] had a broke hip and [he] telling her the whole time [he] have a broke she just lagh [sic] and told the two same inmates to help [him] back to the dorm." Doc. 5 at 2. In his supplemental response, he states that she "work checking sercurity [sic] check at the health care about the same time so she knew what had happend [sic]." Doc. 44 at 1. Although Plaintiff does allege—albeit unclearly—that he told Defendant Marshall he had a "broke [hip]" (Doc. 5 at 2), he once again fails to demonstrate that her subsequent conduct was "poor enough to constitute 'an unnecessary and wanton infliction of pain.'" *Taylor*, 221 F.3d at 1258 (quoting *Estelle*, 429 U.S. at 105–06).

Whether or not she "la[u]gh[ed]" when Plaintiff told her about his hip, Plaintiff alleges that she not only ensured he was taken to the Health Care Unit but enlisted two inmates to help him get there and back to his dorm. Doc. 5 at 2. Moreover, as noted above, the unrefuted medical evidence from Plaintiff's trips to the Health Care Unit does not demonstrate that Plaintiff was in distress or that any Defendant was aware he was in distress. Instead, on December 31, he was "moving all extremities" with "no distress noted," he neither reported nor exhibited any injuries to medical staff, and he was "moving

16

around" and "talk[ing] non-stop" with no signs of obvious discomfort. Doc. 13-1 at 2–3, 7, 8. On January 1, in the midst of "rambling verbally," he neither exhibited signs of nor verbalized any indications of distress, there was no redness or bruising to his hip, and he refused any pain medication. *Id*. at 3, 9, 10.

This is not a situation in which Plaintiff's need for treatment was obvious (as he exhibited no physical signs of serious distress or discomfort) or in which he received medical care so cursory as to amount to no treatment at all (as he was examined multiple times and offered pain medications). *See Simpson*, 200 F. App'x at 839. There is simply nothing before the Court to indicate that Defendants Pettaway or Marshall—or any Defendant—intentionally or deliberately disregarded Plaintiff's serious medical need or an excessive risk to his health or safety.[6] Accordingly, Defendants Pettaway and Marshall are entitled to summary judgment on this claim.

e. **Purported Failure to Protect Claim**

Finally, to the extent Plaintiff seeks to state a failure to protect claim based on another inmate allegedly breaking his hip, he has wholly failed to do so. To state a viable failure to protect claim, Plaintiff must demonstrate that the defendants subjectively knew of a substantial risk of serious harm to Plaintiff and failed to respond to that risk in an objectively reasonable manner. *See Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312,

---

[6] As to Plaintiff's allegation that Defendant Marshall "work checking sercurity [sic] check at the health care about the same time so she knew what had happend [sic]" (Doc. 44 at 1), this allegation is once again far too vague and conclusory to overcome summary judgment. *See Ellis*, 432 F.3d at 1326; *Owens v. Sec'y of Fla. Dep't of Corr.*, 812 F. App'x 861, 870 (11th Cir. 2020) (citing *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("[The Eleventh Circuit] has consistently held that conclusory allegations without specific supporting facts have no probative value.")).

1320 (11th Cir. 2016). However, Plaintiff has once again failed to provide any allegations or evidence that any of the named Defendants had subjective knowledge of a substantial risk of serious harm to him prior to the alleged assault or were present at the time of the assault. *See* Docs. 5 at 3 (providing only that the other inmate "pick[ed] [him] up off the bed and throwed [him]" without any mention of Defendants); 44 at 3 (providing only that unidentified "officers" saw the incident), 6 (stating that "Officer Bussey," who is not a named defendant in this action, "seen the whole thing and did nothing"). Indeed, the undisputed evidence demonstrates that Defendants Marshall, Robinson, and Howard were not even on duty at Bullock at the time of the alleged incident. *See* Docs. 42-1; 42-2; 42-3. Accordingly, Defendants are entitled to summary judgment on this claim.

## V. CONCLUSION

Accordingly, based on the foregoing, the undersigned RECOMMENDS that:

1. Defendants' Special Reports (Docs. 13, 18), which the Court construes as motions for summary judgment, be GRANTED;

2. Judgment be ENTERED in favor of Defendants; and

3. This case be DISMISSED with prejudice.

It is further ORDERED that, by **August 28, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 14th day of August, 2023.

/s/ Stephen M. Doyle
STEPHEN M. DOYLE
CHIEF UNITED STATES MAGISTRATE JUDGE